Case No. 15-6087, John Beauchamp, et al. v. Federal Home Loan Mortgage Corporation Argument not to exceed 15 minutes per side. Mr. Ogden, you may proceed for the appellant. May it please the Court, Mr. Patel, Mr. Beauchamp, I would be pleased to reserve three minutes for rebuttal. My name is Len Ogden, I'm from Paducah, Kentucky, and I'm here representing the victim, maybe a little strong word, but the victim of an unlawful trash out by a real estate broker who we believe, we don't believe, we know from the facts was acting as the agent for Freddie Mac. And I don't want to go over the facts, I'm sure you've read the facts, and I do understand that the standard of review on this appeal is de novo, but I feel like that it would be wrong for me to not explain to the Court what I feel happened in the memorandum opinion written by the magistrate judge below. When I first read the memorandum opinion, I said, oh my goodness, you know, pretty good. I considered it to be very intellectual compared to the briefs that I've written over the years. There were a lot of secondary sources. So then, I read it some more, and since my client is a young lawyer, I discussed it with him, and the facts were pretty fairly set out, pretty fully set out. The law in Kentucky, which of course the substantive law of Kentucky is applicable here, and that was pretty well I feel that it's pretty obvious, made up his mind before he did his analysis as to how he wanted this case to go, and then he attempted, and it's an old saying here, but to put the square peg into the round hole. Well, without getting into his motives, I mean, where do you think his reasoning was mistaken? Well, the biggest indicator is in footnote 21 of his memorandum opinion, and if you go to footnote 21, and I have tried to, all night long, tried to memorize this case name, and for some reason I've had trouble, so I hope I get it right, but it's called Jones v. A. W. Holdings, I believe, and that's a case out of the federal district court in Indiana, and we're talking about now the issue of agency here, and in that case, the district court in Indiana, which of course is in the Seventh Circuit, determined that there was no agency, or in that case, it was not actually agency, but that there was no employer-employee relationship for Mrs. Jones, and had to have the relationship because that was a civil rights case, and in order to have, I guess you could really call it standing here under this discrimination charge that she brought, she had to demonstrate that she was an employee, and the court found that she was not an employee. Now, the problem with that case is that it's distinguishable from the case here in two respects. One, certainly on the law. Number one, it may not be a big distinguishing factor, but it's an employer-employee issue, not just an agency issue, and I know those are close, close parts of the law, but the second thing is that the case applied a different law than what is the law in Kentucky on agency, and what it applied was, and I've got it right here in front of me so I didn't forget, an economic realities test, and that comes for the reasons, I guess, that this was a racial discrimination action, and also the Seventh Circuit seems to apply that test, but we're not in the Seventh Circuit. We're in the Sixth Circuit, and in addition to that, Kentucky law does not use for agency, at least agency under the facts in the case here, this economic realities test. It has many more factors, and just a nutshell, the law in Kentucky on agency, it's where the principal exercises, or has the right to exercise, control over the person who is performing the service or providing the product in regard to the method, manner, and details, and in this case, certainly on the trash out part regarding the personal intrinsic property that may be found in a trash out, there was one thing that was mandated here, and that was that the real estate broker, Mr. Ibeck, was to stop the trash out, contact the personal property eviction coordinator, who was an attorney as I understand it, and there was a telephone number for him, and I believe it was in the 2012 vendor training guide, and that's what he was supposed to do, and he didn't do it in this particular instance, and even if he had some discretion in preservation and maintenance of these foreclosed upon properties that he dealt with, there was no discretion when it came to the issue of how to conduct a trash out and when to notify the personal property eviction coordinator. Well, just before we move away from your original point, you said you were so surprised to see Jones. I thought you were going to... Let me get back to Jones. Wasn't there a factual... I don't want to ask you a leading question on this. That's all right. I just want to hear what you say. All right, yeah, let me get back to Jones. Before I run out of time, I want to get back to Jones. Yes, in Jones, yes, Ms. Jones, the psychologist, was required to attend meetings. Those were the facts. In addition, she was required to submit, I believe they were monthly, but anyway, periodic reports to A.W. Holdings concerning her psychology cases, her counseling cases, but that was a general thing and had nothing to do with discrimination and nothing to do with creating an agency, or in that case, it had to be an employer-employee relationship. Our case here, however, is different because there was an exercise of control, a specific exercise of control and supervision, whatever, and in fact, there was a team that I pointed out, I think, in our reply brief called the Preservation and Maintenance Team, and their primary purpose was to exercise, and I might be adding this word, so, you know, take it with a grain of salt, but to exercise rigorous control over their real estate brokers. Now, that's agency, and the issue in this case was trashing out a garage that had a number of items, and many of them, and one obvious item, the photo collage, which constituted personal intrinsic value personal property. That's sort of redundant on that, but anyway, that was the case, and so what I'm saying here is that the magistrate judge had to reach all the way over to this little case in Indiana, you know, Seventh Circuit, Indiana, District Court case, and try to argue that that case held, if applied to the facts over here in our case, that there was no agency between Mr. Ibeck and Freddie Mac, and that's just not the situation as I compare the two cases. Apart from the supervision, the sort of check-in provisions that you described, where the guy would have to call Freddie Mac, you know, if it had a certain value, whatever. I mean, what other facts would you point to here that you think established the sort of control necessary for vicarious liability under Kentucky law? All right, in this instance, there was required training that was to be undergone, and there was a penalty for that, and the penalty, as ultimately was imposed, was probation in this case. The record is undisputed that the training was not carried out, or not performed, excuse me, by Mr. Ibeck, the real estate broker, and as a result, he was placed on probation. So it apparently was very important to Freddie Mac to provide this training. So I think the training, and unlike the case over in Indiana, you know, the training in that case, it was just some meetings. I don't know what the facts didn't seem to come out as to exactly what was said in those meetings in that case, but in our case here, the training went to the preservation and maintenance of the properties, and specifically went to trash outs, and when you had to notify the personal property eviction coordinator, and it wasn't done in this case. So that's one thing. The other thing I already mentioned, the P&M management team, preservation and management team, they were to exercise, as I said, rigorous reviews and control over their brokers. That was another thing. What does that mean exactly? I mean, in concrete, tangible, specific ways, what is that rigorous review or whatever you just described? Real quick, I guess. Yeah, the rigorous review, well, they had a platform, a messaging platform, in which, you know, they could contact the, and they did in this case, Mr. Ibeck, and, you know, I feel like that what happened here is that the magistrate judge, and I'm moving away just a little bit, but to kind of sum up, the magistrate judge felt like that these were just the training, and the supervision, and the messaging platform, and so forth, that all those things were just kind of general guides, and that Mr. Ibeck was allowed to do whatever he wanted to do as long as he got to the end result that they wanted, which was that the property not be sold, but the important thing here on this trash ad is Freddie Mac didn't want to be sued, so they didn't want Mr. Ibeck to be out there trashing out the wrongful things, and then they get sued, so they had an interest in what was performed along the way before they ever got to the sale of the foreclosed upon property. That's Mr. Purtrell. Good morning, Your Honor. It's Bill Purtell for Federal Home Loan Mortgage Corporation. May it please the Court, I'm here to argue the opposite. I believe that the judge sat down and did his job well. He looked at facts. He looked at the substance of law in Kentucky, and he had to make a judgment call. He had to determine as a matter of law that not all agents are the same. What's a power of attorney? What's an independent contractor? What's a real estate agent, as the term is commonly used? When do you hold yourself out through an agent, or when do you use an agent to do a job? And I think the judge formulated it. He had his mind made up, because judges always make their mind up, and of course he had law that was trying to explain to the parties why this is the case. In our statute, 324.01 and .05, which I'll quote it in my brief, license independent real estate brokers. You need to apply to the state of Kentucky to get this broker's license so that you can hold yourself out as a real estate agent. Do you think that that is work encompassed to trashing out only, not to selling or buying a real estate, but trashing out? Is that one of the things that the statute regulates? Yes, it is, because KRS 324.01 defines the broker's license as incorporating property management, and part of property management is if you take over a foreclosed property, of course you're going to find someone's old stuff there. You're not just going to let trash. Anybody to trash out the property, didn't have to be a licensed real estate agent, did you? Correct. There was a subcontractor that was hired by Mr. Ibeck that actually did the hired that subcontractor to do the actual work. So at that point, once again, this is part of what Mr. Ibeck was trained to do. He has a license to do. He represents more people than Freddie Mac. If Freddie Mac fires him, he doesn't go out of business. He has an entire clientele of which Freddie Mac is one customer. When Freddie Mac, quote, puts him on probation, as was stated before, that just meant he got less business from Freddie Mac. The rest of his job, the rest of his duties, the rest of his clientele, his office, his business cards, nothing changed about that because he is an independent licensed real estate agent. But I guess, I mean, the question I would have is his independence seems to be limited in the respect, in a respect that actually is highly relevant under Kentucky law, namely their control of him. And what I'd be interested in hearing you talk about more specifically today is why doesn't the, why don't the supervisory provisions of the contractor, he has to call in when the property appears to have a certain value or when it appears to have intrinsic value, which undisputedly it did here. He's supposed to call Freddie Mac and ask them what to do. Why doesn't that degree of control under Kentucky law create exactly the relation, the relationship that Mr. Ogden says? Because this is about standards. The word control, I think, is just too strong of a term. I understand, but okay, so let me refine it a little bit. Okay, I'm with you in terms of if there were just a ton of guidelines, you know, like let's say somebody has a big estate and they hire a landscaper to mow the lawn every week and they just have tons of instructions, you know, don't get too close to these bushes and cut it shorter here or longer here and so on. Those would be static. Here, it's more interactive. It's not just static guidelines and then you apply them. It's when you get in this situation, you stop and you ask me what to do. Isn't that different than what you're talking about in terms of just principles? I kind of want to say no because I'm a lawyer. I represent Freddie Mac. I represent many banks and they have vendor management departments that give me lots of things. Hey, Bill, if a case is going a certain way, I want you to stop and check with me before you take the next step. Do my clients control me and destroy my independent professional judgment? No. You find your client with a but if I get into an auto accident on the way home from this hearing, is Freddie Mac going to be sued because I ran a red light because in the scope of me attending this oral argument, you know, my client does not dominate or control my independent analysis. They ask me, please check in with me and if you don't check in with me, if you don't do what I would like you to do to interact, I'm going to reward you with less business. What company isn't under that sort control when they work for someone else? An independent contractor is hired to do a job. Of course, they have to do what the job tells them. If you make, I think it has a question. Oh, I'm sorry, your honor. The other question back to review here. You've read the landmark case and no pun intended. That's the name of the case in Kentucky that lays out A through J. There are a number of factors and they are different factors and they are all to be considered by the decider in the case. Is this a question of law or is it a question of fact? This is a question of law because the facts are static. We both agree on the facts that Freddie Mac had these contracts. This is what occurred. There's no determination of, you know, is this fact what it purports to be? It's just what's the weight of this fact? That isn't really, if they're facts, to be balanced though. And that's what A through J tells us. That no one of these is determinative. You look at all of them and some facts pull one way, some facts pull the other. If that's the case, you wouldn't disagree. That's a fact determination. Yes, but that's a fact determination that the NASAR case, in fact, it's NASAR versus Branham, specifically under Kentucky law says agency is a matter of law when the facts are not disputed. So the judge, Judge Berman. The case says the facts weren't disputed and in the preceding paragraph says that it's normally a question of fact if the facts are in dispute. The facts are not in dispute as was Ibeck a broker? What was his contract with Freddie? We know what the contract with Freddie is because that's not the dispute. Then the judge, as a matter of law, can say what do I do with these facts? What do I with the nine-point analysis? Which one do I weigh more? It's balancing, right? Yes, yes. That's Judge Sargas' point. Yeah, and that's Freddie Mac's point as well that yes, they hired Ibeck. They've never denied that. They wanted him to do a job. They never denied that, but they're saying on the whole when you have an independent nationwide network of brokers that each hold independent licenses and have independent duties under their specific state statutes and regimes, if you're Freddie Mac and try to come up with some uniformity to help you manage your business process, should Freddie then be told under the state law of Kentucky that hey, we've never imposed this kind of duty on independent realtors before, but from now on, every commercial entity who hires a real estate broker in Kentucky is going to be liable for all of this torque. That's a major sea change in the law. Not necessarily. If the case said, forget about real estate agent. I think that's a distraction. We're talking about trash outs. If you hire somebody to do trash outs and you have all these limitations and you have situations where the trash out person has to basically just turn to you and say, what do I do here? That under those circumstances, you are the agent of the person who hired or whatever unloaded word we might want to use, hired you to do the trash out. I don't think that's going to change the landscape for real estate agents. That's pretty kind of fact bound. I would respectfully disagree, your honor, because Freddie Mac is allowed to ask for what service it wants. The fact that it asks for a specific service should not translate its specific desires into control. It is control. You haven't grappled with that. That is the biggest thing you have to pin to the mat here, is the control. The control in exactly the situation that was presented here. That if you run into stuff with sentimental value, such as uniforms and boots that John Beauchamp wore in Iraq as a Marine, such as the picture collage, you get in that situation, you call us. You don't get to decide what to do. We control what to do because you call us. And why isn't that control for the purpose of the Kentucky standard? That is a form of control, yes. I will say that, yes, there is control there, but not the kind that creates vicarious liability because their instructions were, if you find non-sentimental property of less than $300, you trash it out. If you find it more, call us. That's a simple dichotomy. I don't think that destroys the independent nature of Mr. Ibex's real estate business when he walks in. If he sees a bunch of tires and paint cans and trashes them out and someone sues him saying, oh, that was very valuable paint, do we have vicarious liability to Freddie Mack? It doesn't matter what was found in the garage for vicarious liability purposes. The question is, at the moment he went into the garage, was he an independent agent making his own pretty simple instructions. If it looks like trash, you can trash it out. If it's not trash, just call me. That simple kind of instruction I don't think destroys control. That's just how Freddie Mack wants its job done. If you hire a plumber and you say, you know, I want you to put in copper pipe, not cheaper pipe, and I don't want you to do a tortured way around if you have to drill through an I-beam, drill through the I-beam, unless it's structural because you know it's going to cost me more if you destroy the structure of the house. At that point, is the plumber now a full-time employee who creates vicarious liability for the person who just said, all I told him to do was just follow some basic instructions in how he does his job? It's a type of control, but I think Judge Werman and the Sixth Circuit can use judicial discretion to say, out of the nine factors, control is but one. Yes, it's an important one. Is there some manner of control? Yes, but in the alternative, are you saying that Freddie Mack should deny, ditch, and abandon its property management structures and allow its independent brokers to do whatever because it fears... That might be a genuine issue of material fact. Doesn't mean Freddie Mack loses, but it means there's a dispute here. A dispute of law. What do the facts mean? The facts are what they are. The Freddie Mack contract is not going to change. That's why I don't say there's a dispute of fact. There's a dispute of what these facts mean as a matter of law, and a jury can't decide that. A jury is going to come back and say, well, you know, there is this contract. There is this relationship. The facts and the affidavits between the parties didn't dispute that. The lawyers who get involved, clash heads, and you guys, your honors, are here to set us lawyers straight as a matter of law. But the A through J factors in Landmark don't mention the terms of the contract. These are fact issues and weighing various conflicting facts typically. How much control versus type of occupation, method of payment. If there's any one of these that can be weighed differently, it seems to me you're in the fact area, not the question of law area. I still say the kinds of fact disputes isn't the kind that fact witnesses resolve. It's the kind of thing to say, okay, if you look at what happened, what is the legal determination? Do these raise to the level? And that's where the Nazar case cites Kentucky case law that says this is the role of the judge in Kentucky, is to look at what is there in the factual record and decide would Freddie Mac and Mr. Beauchamp say different things at trial about what Mr. Eibach actually did? Now, they're going to say Mr. Eibach did what he did. The contract says what he says. The damage happened as they happened. What do you do with it? And Freddie Mac really wants to harp on the fact that it has standards because it's managing a commercial enterprise nationwide. Oh, just before you run out of time, I want to ask you about Henderson's statement. You know, I mean, the Associate General Counsel, Freddie Mac, appears to disagree with the argument that today. I mean, at least as Mr. Beauchamp relates the conversation, he said, Henderson says, yep, Eichbech is our agent and this shouldn't have happened and we're liable and we'll make it right. You know, as a side question, I really wonder why Freddie Mac has not done that here. I mean, they take the man's uniforms from Iraq and so on. They send this guy out who does the wrong thing. You know, these people are totally innocent and they have to chase this forever. I assume they're not asking for a million dollars. That's not your fault, but it is something I wonder about. But why isn't the Henderson comment something that is important here and is admissible because he's speaking within the scope of his responsibility for Freddie Mac? Well, to address that, Freddie Mac is not their only hope. They have sued Eichbech in state court cases pending in Campbell County. I hope they are made whole on their loss. There's absolutely no question that Freddie Mac believes the facts are horrific. The question is if they can go after Eichbech and get their remedy from Eichbech and try to make themselves whole. When Freddie Mac and Henderson are called and they say, hey, your real estate agent did this. I know from conversations I've had on settlement when opposing parties call me, I go, oh, well, the agent did this. Okay. Well, if the agent did this, what can we do about settlement? Let's try some damage control. Let's think about it. He's talking in, no, I would say he's talking about common agency, whereas Mr. Beaucamp might think, well, he's an in-house counsel. He always means exactly what he legally means. I don't think that's the way in-house counsel operate. I'm usually kind of careful about these conversations in my experience. Well, if it's a settlement conversation, any statement made during the course of settlement discussions is inadmissible anyway. It wasn't. It just wasn't. So I would say that when you call in one of the hundreds of Freddie Mac's counsel and put them on the spot, hey, your real estate agent did this, and he says, oh, well, the agent did that. Ah, that sounds bad. I don't think that that creates what the law of Kentucky would not create and would not sanction. That goes against everything Freddie Mac's contracts. So unless your honors have any other questions, I am out of time. Appreciate your argument, counsel. Thank you, your honors. If I could speak just shortly concerning the in-house counsel, Mr. Henderson's statements as related in deposition testimony and also an affidavit that was filed in the case by Mr. Beauchamp. If you look at the Unger-Buehler case, that's Unger-Buehler versus FDIC, which we cited, the magistrate judge below interpreted it one way, and I see it a totally different way. And I know the magistrate judge out of Lexington that wrote that, and he's a very good magistrate judge. But even if the case was a proper decision under the facts, the facts were different in that case. And so under 801 of the Federal Rules of Evidence, the Henderson statement should be admissible in this case. And what the judge did, or the magistrate judge did below, was to make a finding of fact that my client, Mr. Beauchamp, just didn't quite recall or that it was unbelievable that there would have been this discussion about agency between Mr. Beauchamp and Mr. Henderson. Well, it's not Freddie Mac, so he's an employee, so that fulfills one of the three prongs of the test here to see whether this hearsay is going to be admissible under the exception. And the other thing was, you know, did he have the authority to make the statement? Was it within his scope? Well, he was the one that received the paperwork that was sent by my client, and he was the one that he testified, or excuse me, my client testified at deposition that Mr. Henderson said that he had spoken with Mr. Ibeck about the case. He had seen the photographs, there are two of them, that Mr. Ibeck took at the time he, just before he commenced his inventory of the garage contents. It seems to me that, you know, all of this was within the scope and course of his employment for Freddie Mac. The third thing in those three things that are required is that the conversation and the admission of agency by Mr. Henderson was at the time that he was employed by Freddie Mac. So, you know, I don't think that the judge below, magistrate judge, should have decided, and how did say it here, that it is highly implausible that a Freddie Mac employee with an undetermined role in Freddie Mac's affairs vis-a-vis Ibeck Realty would have simply conceded agency status. You got a young idealistic lawyer, in fact, I don't know whether he passed the bar at that time, but at least in law school, he's going to talk about this and even testify at deposition that he sent copies of cases and a letter to Mr. Henderson. Mr. Henderson knew exactly what he was talking about, except maybe he just didn't understand agency, and I'm not talking about real estate agent with agency, but maybe he was incompetent. I don't know, because we don't know anything about him, because he did not file a denial, or it was not provided an affidavit or declaration. I think we have your point, Mr. Ogden, since your time has expired. Yes, and I'm sorry I went a couple of seconds or so a little long. Oh, you're fine. Thank you all very much. Hope everybody has a nice day. Thank you. Appreciate the argument from both counsel. Very well done. We will take your matter under advisement. Issue an opinion. Thank you.